A97A2558. TATE et al. v. HOLLOWAY.
(499 SE2d 72)

RUFFIN, Judge.
Billy Ray Holloway sued Max Tate and V. M. Battle Company, Inc. ("Battle") for malicious prosecution. Following trial, the jury returned a verdict in favor of Holloway. The defendants appealed,

asserting that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict ("j.n.o.v."). We agree with the defendants and therefore reverse the trial court's judgment.

In reviewing the trial court's denial of the defendants' motions for directed verdict and j.n.o.v., we must view the evidence presented at trial, with all reasonable deductions therefrom, in a light most favorable to the prevailing party and determine whether there was any evidence to support the verdict. *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997); *Truck Parts &c. v. Rutledge*, 211 Ga. App. 166 (2) (438 SE2d 404) (1993). Viewed in this light, the evidence at trial showed that beginning in July 1991, Holloway was employed by Battle, a company that installed telephone lines. Defendant Tate was the vice-president and chief financial officer of Battle. During his employment with Battle, Holloway resided in North Carolina but worked at a Battle job site in north Georgia. Because Holloway did not have his own transportation, he was using one of Battle's company trucks to travel between his home and the worksite. Holloway's supervisor, Joe McCutchen, testified that although Holloway initially had permission to use the truck for the commute, "he was given like a week's notice or whatever to make arrangements for his own transportation. . . ."

On July 11, 1991, when Holloway and his crew had finished their work for the week, Holloway attempted to contact McCutchen to inquire about driving a Battle truck home for the weekend. Holloway could not locate McCutchen, however, and called Battle's company offices in Alabama to explain his dilemma to Battle's operations manager, Dave Foreman. Foreman also attempted to contact McCutchen to discuss the situation. Approximately one hour later, Foreman told Holloway he could not locate McCutchen and that he should go ahead and take the truck home.

Because the truck was low on fuel, Holloway drove to a service station where Battle had a gas credit account. When Holloway attempted to purchase gas on the account, a gas station employee informed him that the Battle account was closed. Holloway again called Dave Foreman in Alabama to discuss this situation. Foreman apologized, put Tate on the telephone to speak with the station attendant, and following this latter conversation, the gas purchase was authorized. After fueling the truck, Holloway and his crew returned home to North Carolina.

At approximately 7:00 a.m. the following morning, Holloway received a telephone call from Battle employee Raymond Hastings. Hastings was attempting to locate Holloway's brother, who worked on Holloway's crew for Battle. According to Holloway, Hastings asked him to "get a hold of [the brother] and have him bring the truck down

to move [a] piece of equipment, a backhoe or something." Holloway called his brother, who told Holloway that due to the problems the crew had with the truck the prior day, he did not want to drive it back and move the equipment. Holloway spoke with Hastings a short time later and informed him of his brother's response. Holloway subsequently called back to Battle's Alabama office to speak with Dave Foreman. However, Battle's president, Pamela Foreman, answered the phone and a heated conversation ensued concerning Holloway's demand for a paycheck. During this conversation, Pamela Foreman asked Holloway "to return the V.M. Battle truck to Georgia because [the company] needed the truck to get some jobs done." Holloway responded: "you are not getting your ____ truck back until I get my paycheck."

Later that day, Battle's vice-president, Tate, contacted the sheriff's department regarding the truck and the following day he obtained a warrant for Holloway's arrest. Holloway was subsequently arrested for theft by taking at which time the truck was recovered from his front yard. Holloway was released from jail when he posted bail that was reduced from $100,000 to $10,000.

The charge was presented to a grand jury in January 1992, but a no bill was returned. The charge was nevertheless again presented to the January 1993 grand jury and an indictment was issued. On April 21, 1993, however, the trial court issued an order to dead docket the case "for the reason that the District Attorney's office has conducted further investigation in this case which indicates evidence to be insufficient to continue prosecution." On March 16, 1995, the trial court issued a nolle prosequi order due to insufficient evidence. Holloway subsequently filed the instant action against Tate and Battle for malicious prosecution and, as stated above, the jury returned a verdict in Holloway's favor.

The essential elements of a cause of action for malicious prosecution "under OCGA § 51-7-40 are: (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff. [Cit.] The gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution. [Cits.]" *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994). In this appeal, the defendants assert, inter alia, that the trial court erred in denying its motions for directed verdict and j.n.o.v. because there was no evidence showing the prosecution was instigated without probable cause. We agree.

We note initially, that unless the facts regarding probable cause are undisputed, it is a question for the jury. See OCGA § 51-7-43; *Fuller v. Jennings*, 213 Ga. App. 773, 775 (1) (445 SE2d 796) (1994).

"Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." OCGA § 51-7-43. Although evidence of an indictment is not conclusive, it is prima facie evidence of probable cause which shifts the burden to the plaintiff " 'to come forward with specific facts tending to show that probable cause did not exist for his arrest and that the charges against him were instead motivated by malice.' [Cit.]" *Smith v. Trust Co. Bank*, 215 Ga. App. 413, 416 (450 SE2d 866) (1994); *Fuller*, supra at 775-776.

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. As used in this Code section the term "deprive" means to permanently or *temporarily* withhold the property of another without justification. OCGA § 16-8-1 (1) (A). Thus, regardless of whether an individual intends to take another's property and withhold it permanently, "his intent to take it for his own temporary use without the owner's authorization evinces an intent to commit a theft." See *Smith v. State*, 172 Ga. App. 356, 357 (2) (323 SE2d 257) (1984).

In this case, it is undisputed that Holloway was indicted for theft by taking. In rebuttal, Holloway points to testimony showing that Battle authorized him to take the truck home for the weekend. However, the fact that Battle initially authorized Holloway to take the truck does not end the inquiry. OCGA § 16-8-2 presupposes lawful possession of property, but proscribes a subsequent appropriation of the property with the intention of temporarily withholding it. See also OCGA § 16-8-1 (1) (A). The manner in which the property is appropriated is irrelevant. OCGA § 16-8-2. The evidence in this case is undisputed that although Holloway had lawful possession of the truck, the defendants demanded that he return it because Battle needed it to complete some jobs. Holloway's response to the defendants' demand laid the foundation for probable cause. It showed that he intended to withhold the truck from Battle for an indefinite period of time until he received a paycheck. We are not aware of any provision under the law that justifies such action to secure a paycheck. Finally, although Holloway denies in his appellate brief that "Pam Foreman asked him to return the truck[,]" in violation of Court of Appeals Rule 27 (c) (3) (ii), he fails to cite the record in support of this assertion. Moreover, Holloway's own testimony belies his contention. At trial he stated that during his telephone conversation with Pamela Foreman, "she just went to raising kane [sic] at me, something about bringing the truck back. . . ."

Under these circumstances, Holloway has failed to come forward with specific facts tending to show that probable cause did not exist for the defendants to seek prosecution of this claim. See *Smith*, supra. Accordingly, the trial court erred in denying the defendants' motions for directed verdict and j.n.o.v.

*Judgment reversed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 28, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998 ▮

*Spruell, Taylor & Associates, Melinda D. Taylor, Bach, Hulsey & Carver, Robert J. Hulsey*, for appellants.
*William L. Reilly*, for appellee.