## A00A1107. FLEMING v. U-HAUL COMPANY OF GEORGIA.
### (541 SE2d 75)

MILLER, Judge.

After John Nolan Fleming was arrested by DeKalb County police on an outstanding warrant for theft by conversion, he brought this pro se tort action against U-Haul Company of Georgia, alleging "false arrest, false imprisonment, malicious prosecution, etc." "The et cetera is slander, defamation, separation from [Fleming's] daughter, emotional distress, harm[ ] to [his] name and [his] reputation." He appeals from the grant of summary judgment against him as to all his claims.

Viewed in the light most favorable to Fleming, the evidence of record shows that in October 1997, Fleming rented a U-Haul truck in his own name from defendant's Candler Road office in DeKalb County. Around 9:00 p.m., the truck broke down on Interstate 20 just past Candler Road. Fleming walked back to Candler Road and used a pay phone to call the 1-800 number on the rental agreement. He gave the operator his name, his location, and the contract number and was informed that "someone will be there." An hour passed, and no one from U-Haul appeared, so Fleming walked back to the pay phone and called again. This time he was informed that it would be 30 to 40 minutes but that someone would come. Another hour passed, and no help arrived. Tired, hungry, and frustrated, Fleming left the keys in the truck (not in the ignition) and hitchhiked to his home in Stone Mountain.

Fleming never thought of "just walking up the road to the U-Haul Center that was right there on Candler Road . . . because [he was] supposed to be waiting . . ." with the truck. Although Fleming had left a cash deposit for the return of the truck, he never returned

to the U-Haul office to close out this contract. He heard nothing further from the agency about this contract and had no further contact with U-Haul until February 1998, when he rented another vehicle without anyone mentioning the earlier incident.

While driving the second truck, Fleming was stopped by DeKalb County police for failure to maintain lane. After examining Fleming's driver's license and rental agreement, the officer informed him that there was an outstanding warrant for his arrest. Fleming was handcuffed and taken to jail, where he spent eight days before making an $850 cash bond. In July 1998, the grand jury indicted Fleming for theft by conversion for failing to return the truck in accordance with the rental agreement. The conversion charge was dismissed in October 1998 because the "truck has been recovered [and U-Haul as the] victim does not wish to pursue the case any further."

After discovery, U-Haul moved for summary judgment, supporting its motion with the deposition of Fleming and a certified copy of the grand jury indictment. The trial court granted the motion, concluding that (1) any action for malicious prosecution, false arrest, or false imprisonment is barred by the finding of probable cause inherent in the indictment and by Fleming's failure to adduce any evidence of malice; (2) any claim for defamation is precluded by the privilege of reporting a suspected crime in good faith; and (3) U-Haul's actions do not rise to that level of extreme or outrageous behavior that will support an action for the intentional infliction of emotional distress. Fleming enumerates the grant of summary judgment, arguing there are genuine issues of material fact remaining for jury resolution. Summary judgment appeals are de novo reviews.[1]

1. An action for false imprisonment under OCGA § 51-7-20 cannot be maintained where the arrest was carried out pursuant to a valid warrant, no matter how corrupt the motives of the prosecutor or how unfounded the imprisonment may be.[2] Where criminal process, valid on its face, has been maliciously sued out without probable cause, an action for malicious arrest or malicious prosecution is the only authorized remedy.[3] As there is no contention here that the warrant under which Fleming was arrested was not valid, the trial court correctly granted summary judgment as to any claim for false imprisonment.

2. To make out a claim of false arrest under OCGA § 51-7-1 or malicious prosecution[4] under OCGA § 51-7-40, the plaintiff must

---

[1] *Contract Harvesters v. Mead Coated Board*, 239 Ga. App. 853 (522 SE2d 260) (1999).

[2] *Grist v. White*, 14 Ga. App. 147, 150-151 (2) (80 SE 519) (1914).

[3] *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179 (1) (449 SE2d 895) (1994).

[4] An inquiry of the accused before a committing court or justice of the peace (now the magistrate) amounts to a prosecution. OCGA § 51-7-42; *Page v. Citizens Banking Co.*, 111

show both the presence of malice and the absence of probable cause.[5] These actions are strictly guarded and never encouraged except in plain cases; otherwise, no one would willingly undertake to vindicate a breach of the public law and discharge the duty to society, faced with the prospect of an annoying suit.[6] "There can be no recovery, even though the prosecution was malicious, if there was probable cause for it; and [even] if there was no probable cause, there can be no recovery if the prosecutor acted without malice. [Cits.]"[7] The return of an indictment by the grand jury investigating the alleged offense is prima facie, but not conclusive, evidence of the existence of probable cause.[8] But in order to be protected from liability for malicious arrest or malicious prosecution by the grand jury's indictment, the prosecutor "must make a fair, full and complete statement of the facts as they exist. He is not relieved if he conceals facts, nor if he distorts facts, nor if he is negligent in ascertaining facts."[9]

> Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court.[10]

The wording of these Code sections is not exhaustive[11] of all cases of the absence of probable cause but "undertakes to settle an [extreme] instance in which the court and jury shall recognize the absence of probable cause."[12] While not conclusive, the dismissal of the criminal charge is some evidence that probable cause was lacking.[13]

Here, the jury would be authorized to find that U-Haul negligently failed to ascertain the complete state of facts or recklessly failed to present them fully and fairly to the magistrate who issued the arrest warrant.[14] The accuser's good faith in swearing out the

---

Ga. 73, 84 (4) (36 SE 418) (1900).

[5] *Coleman v. Allen*, 79 Ga. 637, 640 (1) (5 SE 204) (1888).

[6] *Ventress v. Rosser*, 73 Ga. 534, 541 (3) (1884).

[7] *Ga. Loan & Trust Co. v. Johnston*, 116 Ga. 628, 630 (43 SE 27) (1902).

[8] *Darnell v. Shirley*, 31 Ga. App. 764, 765 (7) (a) (122 SE 252) (1924).

[9] *Hicks v. Brantley*, 102 Ga. 264, 273 (2) (29 SE 459) (1897).

[10] OCGA §§ 51-7-3; 51-7-43.

[11] Compare *Darnell v. Shirley*, supra, 31 Ga. App. at 765 (5), where this Court, interpreting § 4440 of the Civil Code (1910), held that want of probable cause "exists *only* 'when the[se] circumstances . . .' " obtain. (Emphasis supplied.)

[12] *Coleman v. Allen*, supra, 79 Ga. at 641 (1).

[13] *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (b) (282 SE2d 393) (1981).

[14] With certain exceptions not applicable here,

"[t]he law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains

warrant would tend to negate malice but that is a question for the jury.[15] Summary judgment on this record was in error because there is evidence to rebut the prima facie case of probable cause established by the indictment.

3. The trial court also concluded there was no evidence of malice. In this regard, Fleming admitted he had no evidence of any personal animosity toward him held by any U-Haul employee.

"Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."[16] Malice may be inferred if defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff.[17] Malice sufficient to sustain a recovery may be inferred from the want of probable cause.[18] If a reasonable person would have investigated to determine if probable cause existed prior to swearing out a warrant, then such failure to make an investigation may imply malice, as well as go to whether probable cause existed.[19]

In our view, a jury could infer malice by concluding that U-Haul wantonly disregarded Fleming's rights in swearing out an arrest warrant for the theft of its broken-down rental truck that Fleming left just up the road from the Candler Road rental office, right where he informed U-Haul's agents it was stalled, after the twice-promised roadside assistance never materialized.[20] Based on the record before us,[21] the trial court's grant of U-Haul's motion as to Fleming's claim for false arrest or malicious prosecution was in error.[22]

---

while acting as such agent and within the scope of his authority. . . . The rule does not depend . . . upon the fact that the agent *has* disclosed the knowledge or information to his principal; subject to the exceptions named, the law conclusively presumes that he has done so, and charges the principal accordingly."
(Emphasis in original.) *German American Mut. Life Assn. v. Farley*, 102 Ga. 720, 738 (2) (29 SE 615) (1897). Consequently, U-Haul is deemed to have knowledge of all the pertinent information, including the location and status of the stalled vehicle on Candler Road near the rental agency, that Fleming communicated to the 1-800 operator.

[15] *Hicks v. Brantley*, supra, 102 Ga. at 269 (2).

[16] OCGA § 51-7-2.

[17] *Willis v. Brassell*, 220 Ga. App. 348, 352 (3) (469 SE2d 733) (1996).

[18] *Hicks v. Brantley*, supra, 102 Ga. at 268 (1). Accord *Stuckey v. Savannah, Fla. &c. R. Co.*, 102 Ga. 782, 784 (29 SE 920) (1898) (where plaintiff "shows a *total* want of probable cause, malice *will* be inferred without proof.") (emphasis supplied).

[19] *Medoc Corp. v. Keel*, 166 Ga. App. 615, 618 (2) (305 SE2d 134) (1983) (decision of bar manager to initiate criminal proceeding for theft against patron without investigation "served as proof of malice, independent of any inference drawn from a total want of probable cause. . . ."). Accord *Nicholl v. Great A & P Tea Co.*, 238 Ga. App. 30, 33 (1) (517 SE2d 561) (1999) (physical precedent only).

[20] *Melton v. LaCalamito*, supra, 158 Ga. App. at 824 (2) (c) and cits.

[21] U-Haul has not attempted to disprove that Fleming used the 1-800 number to inform a responsible person that the rental truck had stalled.

[22] *McGonagil v. Treadwell*, 216 Ga. App. 850, 854 (2) (456 SE2d 260) (1995).

4. The trial court further erred in concluding that any action for defamation was precluded by the privilege of reporting a suspected crime in good faith.

Reporting a suspected crime is a *conditionally* privileged communication under OCGA § 51-5-7 (1) and (2) as both public and private legal and moral duties.[23] Whether the privilege is a complete defense to an allegedly defamatory communication is generally a question of fact for the jury[24] and depends on the intention with which it was published. "If in good faith, with the *sole* purpose of protecting the interest of the defendant, it would be; if maliciously, for the purpose of injuring the reputation of the plaintiff, it would not be."[25] Specifically,

[i]f the time and place and person are all appropriate, but the manner and form of the communication are such as to indicate, not a desire to vindicate the law, but to injure and defame the person whose name is disclosed in the communication, the privilege does not exist. The privilege is given by the law for a wise purpose, and the law will not tolerate its being used to vent the malice of any individual, even though he may be one[, like U-Haul in this case,] who thinks he has been grievously wronged.[26]

In light of the circumstances authorizing a finding of malice, the material question of whether U-Haul's agent exercised good faith in stating fully and fairly the facts that led to the arrest warrant against Fleming for theft must be submitted to the jury.[27]

5. The circumstances authorizing a finding of malice do not necessarily authorize a finding that Fleming's arrest for theft by conversion constituted such extreme and outrageous acts as to support an award for the intentional infliction of emotional distress.

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages

---

[23] *Ventress v. Rosser*, supra, 73 Ga. at 539. See also *Fedderwitz v. Lamb*, 195 Ga. 691, 692 (25 SE2d 414) (1943) (what is mentioned in Code section 51-5-7 deals with cases of conditional privilege only).

[24] *Zielinski v. Clorox Co.*, 270 Ga. 38, 40 (1) (504 SE2d 683) (1998).

[25] (Emphasis supplied.) *Holmes v. Clisby*, 118 Ga. 820, hn. 2 (45 SE 684) (1903).

[26] *Gillis v. Powell*, 129 Ga. 403, 409 (5) (58 SE 1051) (1907).

[27] *Holmes v. Clisby*, supra, 118 Ga. 820. Accord *Kennedy v. Johnson*, 205 Ga. App. 220, 223 (3) (421 SE2d 746) (1992).

for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[28]

In our view, a rational and impartial jury could decide that it is both atrocious and utterly intolerable in a civilized society for the lessor of a valuable motor vehicle to demand the arrest of its lessee for conversion, simply because the lessee did not return the vehicle to the designated place at the designated time and did not return to claim a cash deposit, where, as in this case, the lessor has imputed knowledge of all the additional and extenuating circumstances as reported by Fleming to the 1-800 operator. The trial court erred in concluding as a matter of law that the facts authorized by this record do not rise to the requisite level of outrage and egregiousness in character, and extremity in degree, that no reasonable person is expected to endure.[29] The grant of summary judgment as to Fleming's claim for the intentional infliction of emotional distress was also in error.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 19, 2000 —
RECONSIDERATION DENIED NOVEMBER 7, 2000 — ▮

*Herbert P. Schlanger*, for appellant.
John Fleming, *pro se.*
*Savell & Williams, William E. Turnipseed*, for appellee.

---

[28] (Punctuation omitted.) *Bowers v. Estep*, 204 Ga. App. 615, 618 (2) (420 SE2d 336) (1992), citing Restatement (Second) of Torts, § 46, comment d.

[29] See *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 28-29 (3) (525 SE2d 751) (1999) (loss control manager's admission that she never saw plaintiff shoplift but nevertheless swore out a warrant knowing it would result in plaintiff's immediate arrest authorized jury's verdict for intentional infliction of emotional distress). Compare *Carruth v. Roberts*, 189 Ga. App. 247, 250 (4) (375 SE2d 499) (1988).