A01A0706. CORPORATE PROPERTY INVESTORS et al. v. MILON.
A01A0707. LOCKE v. MILON.
(549 SE2d 157)

ELDRIDGE, Judge.

These are interlocutory appeals from the denial in part of motions for summary judgment by Corporate Property Investors, owners of Lenox Square Shopping Mall, Pembroke Management, Inc., management company for the mall, Minasha Fernanders, a Lenox Square security guard, and Officer Constance A. Locke, the Atlanta Police Department (APD), who was on beat patrol responding to a dispatch to Lenox; their motions were denied as to Captain Ronald C. Milon's, a Northwest Airlines pilot, claims against them for negligence, false arrest, false imprisonment, assault and battery, malicious prosecution, and punitive damages. The trial court erred in denying summary judgment on the claims for assault and battery; the trial court is affirmed as to the denial of summary judgment for claims of negligence, false arrest, false imprisonment, malicious prosecution, and punitive damages as to all the defendants except Officer Locke. Officer Locke is entitled to summary judgment under discretionary immunity.

On December 18, 1996, while passing Episodes Clothing Store, Fernanders allegedly saw someone, who appeared to be Captain Milon, placing a white blouse into a black bag. She went into the store and approached the plaintiff who had a black bag, tapping him on the shoulder to get his attention. When the security officer approached Milon, he had laid an off-white blouse down on a counter, but again had it in his possession when Officer Locke arrived, because he testified that he was in the process of purchasing it. Fernanders requested that Milon leave the store with her, which he refused to do, saying that this must be a joke; Milon continued shopping for five or ten minutes. At no time did Fernanders identify herself or tell Milon what she wanted or question the employees in the store, regarding the belief that Milon had attempted to shoplift from their store.

Fernanders reported by radio to her supervisor that she had witnessed a customer attempting to shoplift at Episodes and asked "for a backup police officer." The supervisor called APD; it was reported to APD that "there was a shoplifting in progress," and Officer Locke responded. Outside Episodes, Fernanders told Officer Locke outside Episodes that "she witnessed Mr. Milon take a white blouse, conceal

it in his tote bag, and attempt to walk out of the store[; he] saw her standing there and immediately turned around, put the bag down, grabbed the blouse, and put it either back out on the shelf or hung it up." Fernanders pointed out Captain Milon, who was still inside Episodes, to Locke as the attempted shoplifter.

Captain Milon denied attempting to place the blouse in his child's tote bag or even opening it in Episodes and stated he never saw Fernanders until she spoke to him. The assistant manager of Episodes assisted Milon when he entered the store while he selected an off-white blouse and a pants suit for his wife.

On cross-examination, Fernanders admitted that she never witnessed Captain Milon remove a white blouse from his bag. But Fernanders had previously told Locke and the magistrate that she had witnessed Milon place a garment in the bag and then remove the garment, which had been relied upon to establish probable cause for the arrest and bindover. At the preliminary hearing attended only by Fernanders for the prosecution, Fernanders revealed that as she was passing by the store window, she had seen Milon putting the blouse in the bag through an array of mannequins from a distance of 45 feet.

Officer Locke approached Captain Milon based on the allegations made by Fernanders alone, and Milon saw Fernanders with Officer Locke and responded defensively and belligerently as a black man previously falsely suspected of shoplifting by Fernanders while Christmas shopping for his wife. Officer Locke asked where the black bag was, and he answered, "what bag?" Then Milon told Officer Locke that his child's black tote bag was in the chair. Neither Officer Locke nor Fernanders made any investigation or questioned any of the employees of Episodes prior to or even after arresting Milon. Thus, based upon her experience, Officer Locke concluded that Milon's demeanor indicated his guilt to her. Therefore, Officer Locke arrested Milon based upon his demeanor, response, and Fernanders' statement. Based only on the facts told her by Fernanders and her subjective opinion of Milon's attitude, she immediately placed Milon under arrest.

Based upon Fernanders' testimony alone, Captain Milon was bound over by the magistrate. In the State Court of Fulton County, the charge of shoplifting was nolle prossed against Milon.

### Case No. A01A0706

1. The defendants contend that the trial court erred in denying summary judgment to them as to negligence, false arrest, false imprisonment, assault and battery, malicious prosecution, and punitive damages.

(a) The defendants contend that they are shielded from liability

for false arrest, false imprisonment, and malicious prosecution, because Officer Locke exercised her own professional judgment in making the arrest of Captain Milon for attempted shoplifting without the influence of Fernanders. See *Jacobs v. Shaw*, 219 Ga. App. 425, 426 (1) (465 SE2d 460) (1995). Had the evidence revealed that Officer Locke, in fact, made an independent investigation, as was her professional duty to do, and based her decision to arrest Milon on her independent investigation and the statements of Fernanders, then there would be a basis upon which professional judgment was exercised, and such would constitute a defense. However, merely to assert that Officer Locke exercised her professional judgment based on no probative facts, other than those told to her by Fernanders, some of which Fernanders now admits that she did not see, fails to constitute the predicate for the defense of the exercise of independent professional judgment by the on-duty police officer, because Officer Locke acted solely on the facts urged by another without any independent investigation to corroborate such allegations. See id. at 426-427 (1); *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179-180 (1) (449 SE2d 895) (1994). Further, plaintiff's evidence controverts Officer Locke's affidavit and testimony. *Jacobs v. Shaw,* supra at 426.

In *Jacobs v. Shaw*, supra at 426, the professional judgment of the nonparty officer was based upon the prosecution witness' statement, misrepresentations made by the accused regarding the prosecuting witness' statement, on-scene investigation, review of the report by the state regulatory agency after checking the gas pump for accuracy, the accused's statement, and professional experience. Id. at 427. In *McLeod v. Pruco Life Ins. Co.*, supra at 178-179, the detective based his professional judgment upon two witnesses' statements obtained in the investigation, circumstantial evidence that the accused only had access to the money determined by investigation, and the officer's independent investigation. In contrast, in this case the only alleged facts upon which probable cause could be based was the statement of Fernanders as to what she allegedly saw.

Furthermore, as a party and not as a disinterested witness, unlike the above cases, Officer Locke's statement that the arrest was based upon her professional judgment constitutes a mere statement of self-serving opinion and a legal conclusion that cannot support the grant of summary judgment.

> [W]e must give full weight to the rule that a *jury*, not a *judge*, may construe the facts upon which such opinion is based and reach a diametrically different conclusion to that reached by the witness. . . . Thus, on opinion evidence alone, a summary judgment is not demanded as a matter of

law, although such opinion evidence is always sufficient to make a jury issue.

(Citations omitted; emphasis in original.) *Ginn v. Morgan*, 225 Ga. 192, 193 (167 SE2d 393) (1969); see also *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745, 746-747 (285 SE2d 689) (1982); *Tony v. Pollard*, 248 Ga. 86, 90 (3) (281 SE2d 557) (1981); *Home Ins. Co. v. Sunrise Carpet Indus.*, 229 Ga. App. 268, 272-273 (2) (493 SE2d 641) (1997). " 'An expert may aid the jury, but he cannot perform the functions of a juror, and under the guise of giving testimony, state a legal conclusion. [Cits.]' " *Wells v. Metro. Life Ins. Co.*, 107 Ga. App. 826, 834 (131 SE2d 634) (1963). "Allegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment." (Citations and punctuation omitted.) *Johnson v. MARTA*, 230 Ga. App. 105, 107 (1) (495 SE2d 583) (1998).

(b) If all of what Fernanders told Officer Locke was proven to be true, then this would constitute probable cause for the arrest. However, there exists a compelling issue of the credibility of Fernanders. Fernanders made material, prior inconsistent statements to both Officer Locke and the magistrate that she saw Captain Milon take the blouse out of the bag and put it back on the shelf, but on deposition she admitted that she had not seen Milon take the blouse out of the bag.[1] Further, there exist facts tending to disprove what Fernanders testified to having seen, i.e., (1) the fact that she allegedly observed what she claims while walking by the store window handing out security flyers 45 feet away and through a mannequin-crowded store window; (2) the fact that the child's black tote bag allegedly held the blouse with all the other items in it already; (3) the fact that the store personnel did not see Milon open the bag while he was being helped by the manager; and (4) the fact that the plaintiff denied everything that Fernanders said that she saw.[2] These questions of credibility and conflict in the evidence can be resolved only by a jury. See *Foster v. Ramsey*, 245 Ga. App. 118, 119 (1) (536 SE2d 550) (2000); *Harding v. Ga. Gen. Ins. Co.*, 224 Ga. App. 22, 25 (479 SE2d 410) (1996). "Where a party gives testimony contradicting an out-of-court admission of such party, it is for the trier of fact to say whether it was true or false when made. [Cit.]" *Dills v. Bohannon*, 208 Ga. App. 531, 533 (1) (431 SE2d 123) (1993); *Foster v. Ramsey*, supra at 120.

---

[1] "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." OCGA § 24-9-83; *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982).

[2] "A witness may be impeached by disproving the facts testified to by him." OCGA § 24-9-82; *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839 (418 SE2d 119) (1992).

(c) Where a prosecuting witness urges the arrest and prosecution of another without adequate investigation to determine if there exists a reasonable basis to believe that probable cause exists, such individual risks tort liability if there exists no probable cause to reasonably believe that the plaintiff committed a crime. See *Ellis v. Knowles*, 90 Ga. App. 40, 42 (2) (81 SE2d 884) (1954); see also *Nicholl v. Great A & P Tea Co.*, 238 Ga. App. 30, 33-34 (517 SE2d 561) (1999) (physical precedent only). In this case, Fernanders, when the testimony that is in conflict is construed most strongly against Captain Milon, thought only that she saw Milon attempting to put a blouse in a black bag, which, if true, could have several reasonable inferences pointing to innocence, as well as guilt, and requiring further investigation.

In deciding if the belief of the prosecutor was reasonable, the prosecutor must have determined "that [the] apparent state of facts which seem[ed] to exist after reasonable and proper inquiry [by the exercise of] the duty of caution and avoidance of haste [constituted probable cause]." *Auld v. Colonial Stores*, 76 Ga. App. 329, 335-336 (2) (45 SE2d 827) (1947); see also *Coleman v. Allen*, 79 Ga. 637, 640-642 (5 SE 204) (1888); *Nicholl v. Great A & P Tea Co.*, supra at 33; *Sanfrantello v. Sears, Roebuck & Co.*, 118 Ga. App. 205, 207 (163 SE2d 256) (1968). If a reasonable person would have investigated to determine if probable cause existed prior to urging an arrest and prosecution, then such failure to make an investigation may imply malice, as well as go to whether probable cause existed. See *McClelland v. Courson's 441 South Station*, 248 Ga. App. 170 (546 SE2d 300) (2001); *Fleming v. U-Haul Co. &c.*, 246 Ga. App. 681, 683-684 (541 SE2d 75) (2000); *Medoc Corp. v. Keel*, 166 Ga. App. 615, 617 (2) (305 SE2d 134) (1983); *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (b) (282 SE2d 393) (1981); see also *Nicholl v. Great A & P Tea Co.*, supra at 33.

> In actions for [tort liability for false arrest, false imprisonment, or malicious prosecution], the question is, not whether the plaintiff was guilty, but whether the defendant had reasonable cause to so believe — whether the circumstances were such as to create in the mind of the defendant a reasonable belief that there was probable cause for the [arrest and] prosecution. Probable cause is defined to be the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was [arrested and] prosecuted.

(Citations and punctuation omitted.) *Tanner-Brice Co. v. Barrs*, 55

Ga. App. 453 (2) (190 SE 676) (1937); see also *Wilson v. Wheeler's, Inc.*, 190 Ga. App. 250, 252-253 (1) (378 SE2d 498) (1989). "Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they amount to probable cause is a question of law for the court." (Citations and punctuation omitted.) *Wilson v. Wheeler's, Inc.*, supra at 252 (1); see also *Booker v. Eddins*, 183 Ga. App. 449, 451 (359 SE2d 211) (1987), overruled on other grounds, *Cincinnati Ins. Co. v. Premier Tractor &c. Repair*, 192 Ga. App. 243 (384 SE2d 449) (1989).

> The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification. Prosser, [Law of Torts (4th ed. 1971), § 119, p. 842].

(Punctuation omitted.) *Melton v. LaCalamito*, supra; see also *McClelland v. Courson's 441 South Station*, supra; *McGonagil v. Treadwell*, 216 Ga. App. 850, 854 (456 SE2d 260) (1995); *Atlantic Zayre, Inc. v. Meeks*, 194 Ga. App. 267, 269 (390 SE2d 398) (1990); *Wilson v. Wheeler's, Inc.*, supra; *Medoc Corp. v. Keel*, supra at 617. However, if the prosecutor distorts facts, conceals facts, or is negligent in ascertaining facts, then the finding of probable cause by a magistrate will not protect the prosecutor. *Hicks v. Brantley*, 102 Ga. 264, 273 (2) (29 SE 459) (1897); see also *Fleming v. U-Haul Co. &c.*, supra at 683.

(d) The defendants contend that the physical seizure of Captain Milon and handcuffing of him by Officer Locke cannot be imputed to them as an assault and battery. We agree, because she was not acting as either an employee or independent contractor for them at the time of arrest, but in the scope of her official duties.

Officer Locke could be liable for committing an assault and battery upon Captain Milon by making an illegal arrest. See *Napper v. State*, 200 Ga. 626, 629 (1) (38 SE2d 269) (1946). However, the on-duty peace officer, carrying out her official duty, is not the agent, servant, or employee of a private citizen making a complaint; therefore, her conduct cannot be imputed to such citizen. *Hyatt Corp. v. Cook*, 242 Ga. App. 542, 545 (529 SE2d 633) (2000); *Wilson v. Waffle House*, 235 Ga. App. 539 (510 SE2d 105) (1998); *Rembert v. Arthur Schneider Sales*, 208 Ga. App. 903, 905 (432 SE2d 809) (1993); *Quinones v.*

*Maier & Berkele, Inc.*, 192 Ga. App. 585, 589-590 (2) (385 SE2d 719) (1989); *Welton v. Ga. Power Co.*, 189 Ga. App. 17, 19-20 (1) (375 SE2d 108) (1988). The defendants did not control the time, manner, or method of the officer's performance of her official duties; therefore, the officer's conduct could not be imputed to them. *Beck v. Paideia School*, 191 Ga. App. 183, 184 (1) (381 SE2d 132) (1989). Further, Officer Locke did not work off duty for the defendants. *Welton v. Ga. Power Co.*, supra at 19-20.

2. The defendants contend that they cannot be liable under a theory of negligence for any damages sustained by Captain Milon from his arrest, detention, and prosecution, because there is no action for negligent false arrest, negligent false imprisonment, and negligent prosecution. However, plaintiff asserts a claim sounding in negligence, because "[t]here is no such tort [as negligent false arrest or negligent false imprisonment]. To constitute a false imprisonment [or false arrest], the act of the defendant in [arresting or] confining the plaintiff must be done with the intention of causing [an arrest or] confinement." (Citation and punctuation omitted.) *Stewart v. Williams*, 243 Ga. 580, 581 (1) (255 SE2d 699) (1979). By definition a negligent act cannot be malicious, because acting with malice is an intentional act as opposed to a careless act. See *Southern v. Sphere-Drake Ins. Co.*, 226 Ga. App. 450, 452 (486 SE2d 674) (1997). However, in this case, the traditional elements of negligence apply, i.e., (1) a legal duty to exercise ordinary care to protect others from an unreasonable risk of harm; (2) a breach of the standard of care; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to plaintiff's legally protected interest as a result of the breach of duty. *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982).

> If the [arrest and] confinement [are] due to the defendant[s'] negligence, the latter may be liable as for negligence, but the action is then governed by the rules and principles of the tort of negligence, according to which the plaintiff is required to show actual damage. In other words, there can be no such tort as [negligent false arrest or] negligent false imprisonment which of itself makes the defendant liable without proof of the invasion of some interest other than the bare interest in freedom from [arrest and] confinement.

(Citation and punctuation omitted.) *Stewart v. Williams*, supra at 581-582; see also *Baggett v. Nat. Bank &c. Co.*, 174 Ga. App. 346, 348-350 (2) (330 SE2d 108) (1985); *Oden & Sims Used Cars v. Thurman*, 165 Ga. App. 500, 502-503 (3) (301 SE2d 673) (1983).

*Case No. A01A0707*

3. Officer Locke contends that the trial court erred in failing to grant her motion for summary judgment under discretionary immunity while acting under color of law. We agree and reverse.

Officer Locke took the alleged facts reported to her by Fernanders as true without making a professional police investigation and allowed her own personal feelings that a belligerent, hostile attitude by an African-American male accused of a crime was an indication of guilt rather than the righteous outrage of an innocent, law-abiding citizen cloud her professional judgment, causing her to rush to judgment prematurely.

In good faith, Officer Locke believed that at the time of the arrest all the facts alleged by Fernanders were true, that Fernanders saw Captain Milon stuff a blouse into a black bag and that he saw her watching him and removed the blouse from the bag; thus, Officer Locke had a factual basis for probable cause at the time of arrest, although such would constitute unprofessional police work without an independent investigation to avoid making a mistake as occurred in this case. See *Barnett v. State,* 204 Ga. App. 491, 493 (1) (420 SE2d 43) (1992); *Ellis v. State,* 164 Ga. App. 366, 367-368 (2) (296 SE2d 726) (1982). As a trained professional police officer, Officer Locke should have known that prosecuting witnesses generally tell the truth as they know it to be or believe it to be but also can be mistaken as to what they believe they saw or may either intentionally and falsely fill in facts as to what they saw with fictional details or in good faith selectively fill in gaps with what they saw to match their preconceptions, prejudices, or conclusions. Also, witnesses may simply lie from a hidden motive. An investigation is designed to corroborate these alleged facts by other witnesses and to determine the reliability and veracity of the prosecuting witness and the accused to determine if probable cause does in fact exist and not to burden the courts with groundless accusations of imagined criminal conduct. It is for this reason that police officers have broad discretionary judgment in making an arrest, which discretion should never be abdicated by inaction, pressure, persuasion, or prejudice.

Officer Locke's conduct, while unprofessional, was not wilful, fraudulent, corrupt, or malicious; therefore, she enjoyed limited immunity. See OCGA § 36-33-4; *Hennessy v. Webb,* 245 Ga. 329, 330-331 (264 SE2d 878) (1980); *McDay v. City of Atlanta,* 204 Ga. App. 621-622 (1) (420 SE2d 75) (1992); *Price v. Owen,* 67 Ga. App. 58, 60-61 (19 SE2d 529) (1942). For Officer Locke to be liable, there must be not only an absence of probable cause, but also malice. OCGA § 51-7-1; *Smith v. Trust Co. Bank,* 215 Ga. App. 413, 415 (1) (450 SE2d 866) (1994); *Pinkston v. City of Albany,* 196 Ga. App. 43 (395 SE2d 587)

(1990). Although a police officer performs an illegal act, the law will not presume malice or animus from such act alone. *Franklin v. Consolidated Gov. of Columbus, Ga.*, 236 Ga. App. 468, 471 (1) (512 SE2d 352) (1999).

*Judgment affirmed in part and reversed in part in Case No. A01A0706. Judgment reversed in Case No. A01A0707. Miller, J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED MAY 8, 2001 —
RECONSIDERATION DENIED MAY 24, 2001 ▮

*Duncan & Mangiafico, George E. Duncan, Jr.,* for appellants (case no. A01A0706).

*Kimberly L. Miller,* for appellant (case no. A01A0707).

*Mathis & Adams, Charles A. Mathis, Jr., David N. Krugler, Thomas F. Cuffie,* for appellee.